BELLE FANCHER, Administratrix of the Estate of C. E. FANCHER, Appellant, v. J. L. PROCK, and LULA A. PROCK.—88 S. W. (2d) 179.

Division One, November 12, 1935.

1120

*Stillwell & Fendorf* and *C. D. Snodgrass* for appellant.

*H. M. Atwell* and *Irwin & Bushman* for respondents.

HYDE, C.—This is an action to try and determine title to 940 acres of land in Miller County, with which is joined a separate count in ejectment. Plaintiff claimed title in fee simple and also the right to possession. Defendants' answer as to both counts was a general denial. The court, sitting as a jury, found that plaintiff was the owner of and entitled to the possession of 580 acres of the land, and that defendant was the owner of and entitled to 360 acres

thereof. Judgment was rendered accordingly and plaintiff has appealed therefrom.

It was shown that on November 2, 1921, Jacob J. Falter and wife, by warranty deed, recorded in Book 33, page 228, of the records of Miller County, conveyed to A. C. Dauchy 1160 acres of land in Miller County, described in said deed as follows:

"All of the South half of the Southwest quarter and the Northwest quarter of the Southwest quarter, and the Southwest quarter of the Northwest quarter of Section No. Twenty-eight (28) also the South half, and the Southwest quarter of the Northwest quarter of Section No. Twenty-nine (29) also the Southeast quarter of the Northeast quarter of Section No. Thirty (30) *also the North half and the Southeast quarter of Section No. Thirty-two (32),* and the West half of the Southwest quarter and the Northeast quarter of the Northwest quarter of Section No. Thirty-three (33) and all in Township No. forty (40) N. of Range No. Thirteen (13) West and containing in the aggregate 1160 acres according to the United States Government Survey."

It was shown that, on December 8, 1916, A. C. Dauchy and wife, by warranty deed recorded in Book 38, page 402, of the records of Miller County, conveyed to Alamo National Bank, of San Antonio, Texas, the same land by exactly the same description, after which was set out the following recitals:

"Being the same land conveyed to A. C. Dauchy by Jacob P. Falter and his wife Mary Falter, as evidenced by deed recorded in Miller County, page 228, Deed Book 33, to which reference is hereby made for full and complete description."

It was shown that defendant bought the land from the Alamo National Bank, and that on February 11, 1918, the bank, by warranty deed recorded in Book 41, page 195, of the records of Miller County, conveyed to defendant the same land by exactly the same description as was contained in both of the warranty deeds hereinabove referred to, after which was also set out the following recitals:

"Being the same land conveyed to A. C. Dauchy by Jacob P. Falter and his wife Mary Falter, as evidenced by deed recorded in Miller County, page 228, Deed Book 33, to which reference is hereby made for full and complete description; and being the same land thereafter conveyed by A. C. Dauchy joined by his wife, Ophelia C. Dauchy, to said Alamo National Bank by deed recorded in Book 38, at page 402, of the records of said Miller County, to which said reference is also made. . . .

"It is expressly agreed and declared that the vendor's lien is hereby reserved to secure the due payment of said purchase money note hereinabove described ($8,000 described where the deed stated the consideration), together with all interest thereon and incidents thereto, all in accordance with its face, tenor and effect, after which

this deed shall become absolute; and as additional and cumulative security for the punctual payment of said sums the said J. L. Prock has executed, acknowledged and delivered to Clinton G. Brown, Trustee, a certain deed of trust of even date herewith conveying and mortgaging, with power of sale, said property above described."

The mortgage referred to in this deed from the bank to defendant was executed in the regular form of a Missouri deed of trust by defendant and wife and was recorded after and on the same day that the deed from the bank to defendant was recorded. This deed of trust was described, as follows:

"The south half of the Southwest quarter and the Northwest quarter of the Southwest quarter, and the Southwest quarter of the Northwest quarter of Section No. twenty-eight (28), also all of the South half and the Southwest quarter of the Northwest quarter of Section No. twenty-nine (29) also the Southeast quarter of the Northeast quarter of Section thirty (30) *also the North half of the Southeast quarter of Section No. thirty-two (32)* and the West half of the Southwest quarter and the Northeast quarter of the Northwest quarter of Section No. thirty-three (33), all in township (40) of range (13) and containing in the aggregate 1160 acres according to Government Survey, being the same land conveyed to A. C. Dauchy by Jacob P. Falter and his wife, Mary Falter, as evidenced by deed recorded in Miller County, page 228, Deed Book 33 to which reference is hereby made for full and complete description; and being the same land thereafter conveyed by A. C. Dauchy, joined by his wife, Ophelia C. Dauchy, to said Alamo National Bank, by deed recorded in Book 38, at page 402, of the records of said Miller County, to which reference is also made."

By the use of the word *"of"* instead of the word *"and"* in the description that part of the land in Section 32, the trust deed specifically describes only eighty acres of land in Section 32, while the warranty deeds all described four hundred and eighty acres in this section. This trust deed, described the note secured, which contained the following recital:

"This note is secured by vendor's lien and deed of trust on 1160 acres of land in Miller county, Missouri, conveyed by deed of this date from the payee hereof to the maker hereof. . . ."

After describing the note, the trust deed stated further:

"Said note being also secured by the vendor's lien reserved in the deed of even date herewith whereby said land is conveyed, subject to said vendor's lien and this deed of trust by said Alamo National Bank to said J. L. Prock, this deed of trust is hereby declared to be cumulative and additional to said vendor's lien and shall neither affect nor be affected by the same."

It was further shown that plaintiff was the purchaser at foreclosure sale under this deed of trust and was the grantee in the deed,

executed by the sheriff of Miller County as substitute trustee, conveying title thereunder. The foreclosure deed was in regular form, contained the usual recitals as to default, request to sell, advertisement and sale, and was recorded in Book 64, page 350, of the records of Miller County. It contained exactly the same description of the land as that stated in the deed of trust, including the references to the prior deeds recorded in Books 33 and 38 of the records of Miller County, but excluded 40 acres in Section Twenty-eight, 120 acres in Section Thirty-three, and 60 acres in Section Thirty-two, which it recited had been previously sold and which had been released from the mortgage. This reduced the original tract to the 940 acres in controversy. The notice of foreclosure described the land the same as did the foreclosure deed.

It was admitted that "the official survey returned to the United States General Land Office by the Surveyor General shows that Sections 28, 29, 32 and 33, Township 40, North, of Range 13, West of the Fifth Principal Meridian, are normal sections; that is, that each section contains 640 acres;" and that "the East half of Section Thirty is of normal size; that is, that each quarter section contains 160 acres." There was also evidence that plaintiff, as administratrix of the estate of her deceased husband who had become the owner of the note of defendant and the trust deed securing it, had been authorized by order of the Probate Court of Miller County to foreclose, and to purchase the land for said estate, and also thereafter to rent the land.

The defendant offered no evidence but filed a special demurrer, which the court sustained holding that plaintiff had no right or title to any land in Section 32 except the eighty acres described in the mortgage, the foreclosure notice, and the sheriff's deed, as stated subdivisions of the governmental survey, upon the theory of Declaration of Law A given at defendants' request, as follows:

"That the plaintiff could take no greater title to other or more property than that which was described in the notice of publication, or in the deed of trust which the defendant made to the Bank of Alamo, which was thereafter sold to Charles Fancher and foreclosed; that said deed is specific in its description of the property and that the advertisement of the sale of said property specifically described the property to be sold and that reference to some other deed or instrument, either in the deed of trust or in the notice, is not sufficient to convey title to the whole tract of land owned by the defendant."

Plaintiff's contention that this action of the court was erroneous must be sustained. It is clear that the court's decision was based upon a too narrow construction of the written instruments under which both plaintiff and defendant claimed title. It is obvious from

these instruments that the intention of both parties was to secure the payment of the purchase price of the 1160-acre farm (only one-ninth thereof was paid down) by mortgaging all of the land conveyed; and that the use of the word "of" instead of the word "and," in describing the part of the farm located in Section 32, whereby 400 acres of the 480 acres of the farm in this section was left out of the specific description by governmental subdivisions, was a mere clerical error of the scrivener. In any case, the description of the missing land was supplied by the other deeds referred to in the trust deed and foreclosure deed. Ordinarily even a mutual mistake in description would have to be corrected by an action in equity to reform the mortgage, and to foreclose the mortgage as reformed. However, this court has held that "where the omission is patent and the meaning obvious, it can be cured by construction of the deed by the court." [Whitaker v. Whitaker, 175 Mo. 1, 74 S. W. 1029; see, also, Walker v. Garner, 258 Mo. 494, 167 S. W. 955; Wiechert v. Wiechert, 317 Mo. 118, 294 S. W. 721; Tillman v. City of Carthage, 297 Mo. 74, 247 S. W. 992 (reference to another deed); Korneman v. Davis, 281 Mo. 234, 219 S. W. 904; Waldermeyer v. Loebig, 222 Mo. 540, 121 S. W. 75 (reference to another deed); Board of Trustees v. May, 201 Mo. 360, 99 S. W. 1093; Johnson v. Bowlware, 149 Mo. 451, 51 S. W. 109; Presnell v. Headley, 141 Mo. 187, 43 S. W. 378 (intent); Thomson v. Thomson, 115 Mo. 56, 21 S. W. 1085 (intent); Agan v. Shannon, 103 Mo. 661, 15 S. W. 757 (reference to another deed); Davis v. Hess, 103 Mo. 31, 15 S. W. 324; Wolfe v. Dyer, 95 Mo. 545, 8 S. W. 551 (parol evidence admissible); Prior v. Scott, 87 Mo. 303; Burnett v. McCluey, 78 Mo. 676 (construction in accordance with call for quantity); Clamorgan v. B. & St. L. Railroad Co., 72 Mo. 139 (reference to another deed); Woods ex rel. Rogers v. Henry, 55 Mo. 560; Bates v. Bower, 17 Mo. 550; 18 C. J. 277-288, secs. 242-258; 8 R. C. L. 1071-1088, secs. 126-145; 72 A. L. R. 410, note; 2 Devlin on Deeds, 1906, Chap. XXIX.] As this court further said in the Whitaker case: "A specific description generally prevails over a general description, 'but, whenever possible, the real intent is to be gathered from the whole description, including the general description as well as the particular.' " When the real intent of the parties can then be gathered from the whole description by a reasonable construction of the instrument, "a court of law will declare the meaning . . . without driving the parties to a court of equity to correct it;" and even when a part of the description is inconsistent with other parts, if "the remaining part is sufficient to designate the land sold, the remedy is afforded at law by disregarding the false description and giving effect to the other calls." [Walker v. Garner, 258 Mo. 494, 167 S. W. 955.] This is but an application of ordinary principles of construction of any written instrument, namely: that it "must be construed as a whole,

giving effect to every part, if that is fairly and reasonably possible."
[Myers v. Union Electric Light & Power Co., 334 Mo. 622, 66 S. W.
(2d) 565.] If the specific description in this trust deed of land in
Section 32 is disregarded the description of the whole 1160 acres
claimed can be found from the trust deed in the deeds made a part
thereof by reference.

The best and the usual way of describing farm land in a deed is
to describe it all together in one place therein by specific subdivisions
of the governmental survey. However, that is not the only way it
can be described and that was not the only way it was described in the
deed of trust, foreclosure deed, and notice of foreclosure sale herein.
As described in the specific calls for governmental subdivisions,
there was only described 80 acres in Section 32 and 760 acres in
the whole tract. But the description of the property did not stop
there. It was further stated: (1) That the form conveyed contained
"in the aggregate 1160 acres according to government survey;"
(2) that it was "the same land conveyed to A. C. Dauchy by Jacob
P. Falter and his wife, Mary Falter, as evidenced by deed recorded
in Miller County, page 228, Deed Book 33, to which reference is
hereby made for full and complete description" (in which deed record
there was a description of 480 acres of land in Section 32, which in-
cluded the 80 acres specifically described in the mortgage, etc., mak-
ing an entire tract of 1160 acres) ; (3) that it was also "the same land
thereafter conveyed by A. C. Dauchy, joined by his wife, Ophelia
C. Dauchy, to said Alamo National Bank, by deed recorded in Book
38, at page 402, of the records of said Miller County to which refer-
ence is also made" (in which deed record, there was likewise con-
tained a description of 480 acres of land in Section 32, which in-
cluded the 80 acres specifically described in the mortgage, etc., making
a total of 1160 acres) ; (4) that the obligation of the trust deed was
secured by a vendor's lien on 1160 acres of land in Miller County con-
veyed by the mortgagee to the mortgagor to which the deed of trust
was additional security (this deed from the mortgagee to the mort-
gagor likewise so stated and correctly described the whole tract of
1160 acres of land).

In the Whitaker case, an inconsistent description was disregarded
because the court found "five descriptions which are consistent and
harmonious, and which express the true intention of the grantor,
and a sixth which is inconsistent with the other five, inconsistent with
the evident meaning and intention of the grantor, and which does
not convey a connected body of land (here also there are gaps of
from one-fourth to one-half mile between the tracts described in the
mortgage by the first description), nor one anything like as large as
that called for by the deed." Here, the specific description in the
mortgage covered only eighty acres, included in the larger tract
described in the other deeds, and, therefore, was an incomplete de-

scription, describing less than two-thirds of the tract, which the other four descriptions showed to be 1160 acres, and which deficiency the other four descriptions supplied by reference to quantity and to other deeds where the complete description could be found. We hold that under these circumstances the complete description, as shown by the other deeds referred to in the trust deed, must prevail and the specific call for less land, set out in the description by fractional parts of sections, must yield to the evident and clearly expressed intention to mortgage all of the land conveyed by the Alamo Bank to defendant (all of Section 32 except the S.W. ¼), as security for the payment of the purchase price thereof.

Nevertheless, since we note that the entire property was purchased by the mortgagee at the foreclosure sale for only $500 (the original debt was $8000 and there is nothing to show how much, if any, it had been reduced), it is possible that the garbled first part of the description might have deterred other bidders. No one wants to buy a lawsuit to perfect his title or, at least if that appears to be a reasonable possibility, a purchaser who would make a bid will bid less under such circumstances. Therefore, a misleading description, even though sufficient to convey title may be ground for setting aside a sale, especially if the mortgagee is the purchaser at an inadequate price, because such a sale will be set aside when any substantial irregularity or probable unfairness appears. [Guels v. Mississippi Valley Trust Co., 329 Mo. 1154, 49 S. W (2d) 60; Guels v. Stark, 264 S. W. 693, and cases cited.] A suit to quiet title may be either legal or equitable according to the relief sought and since the facts in evidence tend to show that defendants might be entitled to equitable relief we think that this court has discretion to remand the cause to permit the amendment of pleadings and a retrial thereof so that equities between the parties may be worked out in accordance with principles herein enunciated. [Williams v. Walker, 333 Mo. 322, 62 S. W. (2d) 840; Mann v. Bank of Greenfield, 323 Mo. 1000, 20 S. W. (2d) 502.] If it should be necessary to set aside the sale, we would suggest that a foreclosure under the court's decree, stating a correct and definite description of the land conveyed by the deed of trust, would prevent any doubt from arising in the minds of bidders as to obtaining title to all of the land, without further litigation.

The judgment is reversed and the cause remanded, with directions to allow amendments of pleading if the parties desire and to retry the cause in conformity with the views herein expressed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.